IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOMBARDIER AEROSPACE CORPORATION, | § § § | |
| Plaintiff-counterdefendant, | § § | |
| | § | Civil Action No. 3:12-CV-1586-D |
| VS. | § § | |
| UNITED STATES OF AMERICA, | § § | |
| Defendant-counterplaintiff. | § § | |

MEMORANDUM OPINION
AND ORDER

This litigation between a provider of fractional aircraft management services and the United States of America (the "government") presents issues that affect whether federal excise taxes ("FET") are owed on certain fees paid to the provider. On the parties' cross-motions for summary judgment, and for the reasons that follow, the court holds that the provider lacks standing to challenge the collection of FET on certain fees, and that the Internal Revenue Service ("IRS") is entitled to collect FET on the remaining fees at issue.

I

Because there are some background facts that are better set out in the context of the parties' arguments rather than in an introduction, the court defers discussing them.[1] The

_____

[1]Because both parties move for summary judgment, the court will recount the evidence that is undisputed, and, when necessary to set out evidence that is contested, will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

following introduces the nature of the litigation, the parties' claims and counterclaims, the grounds on which the parties seek summary judgment, and the procedural history of the summary judgment motions.

This is a suit by plaintiff-counterdefendant Bombardier Aerospace Corporation ("BAC") under 26 U.S.C. §§ 6511(a) and (b) and 6415 to recover and abate FET assessed by the IRS under § 4261 of the Internal Revenue Code, 26 U.S.C. § 4261 (Supp. 2014), which imposes a tax on "taxable transportation." *E.g.*, 26 U.S.C. § 4261(a). The government as counterplaintiff asserts a counterclaim for unpaid FET, penalties, accrued, unassessed interest, and statutory additions.

BAC provides management services to aircraft owners and leaseholders of fractional interests in aircraft (collectively, "Aircraft Owners") through its Flexjet program.[2] During the tax periods in question—successive quarters beginning January 1, 2006 and ending December 31, 2007 (the "Tax Periods")—the Aircraft Owners paid to BAC three types of fees that are pertinent to BAC's claims in this lawsuit: monthly management fees ("MMF"), variable rate fees ("VRF"), and fuel surcharge fees ("FSF"). MMF are fixed charges that cover costs associated with ownership of the aircraft, such as insurance, inspection, crew salaries, crew training, aircraft hangaring, and scheduling costs. MMF are incurred regardless of whether an aircraft is being flown. If an Aircraft Owner chooses not to fly during a billing period, it is billed for MMF, which relates to fixed costs of ownership. VRF

---

[2]Although this memorandum opinion and order addresses past practices and prior tax years, the court will use the present tense except where the context otherwise requires.

are charged for each hour of flight time.  These fees cover the direct operational costs associated with flying the aircraft (such as fuel, oil, lubricants, flight planning, and weather and communications services).  FSF are fees that cover the additional costs of fuel that are not included in either MMF or VRF.

During the Tax Periods, BAC paid FET on VRF and FSF collected from the Aircraft Owners, but not on MMF.  Prior to the Tax Periods, the IRS conceded in two audits of Form 720 FET Returns that FET were not owed on MMF.  BAC relied on these concessions when refraining from collecting and remitting FET on MMF for the Tax Periods.  Despite these concessions, the IRS audited BAC for the Tax Periods and assessed FET on MMF.  BAC asserts that nothing changed factually between the prior periods (which covered 11 years) and the Tax Periods that would have warranted such disparate treatment.  When BAC and the IRS were unable to resolve their dispute administratively, BAC paid a divisible portion of the FET assessment on MMF for each Tax Period and filed this lawsuit.

BAC sues the government on two claims:[3] it seeks in part to recover the FET assessed and paid for the Tax Periods on VRF and FSF.  It alleges that, when filing Form 720 FET

_____

[3]In its summary judgment motion, BAC refers to these two claims.  *See* P. Mot. Summ. J. 1 ("This case is comprised of two issues.").  In its complaint, BAC alleges four claims: first, for a refund of FET reported on Forms 720 for the Tax Periods and paid on VRF and FSF that BAC charged to Aircraft Owners; second, for a refund of FET assessed by the IRS on MMF pursuant to an IRS excise tax examination; third, to recover FET for the Tax Periods on MMF that were overpaid by BAC, and abate FET that were assessed by the IRS in violation of the government's Duty of Clarity; and, fourth, to recover FET for the Tax Periods on MMF that were overpaid by BAC, and abate FET that were assessed by the IRS and that the government is estopped from recovering.

Returns, and as a result of illegal assessments made by the IRS pursuant to an excise tax examination, it erroneously overpaid FET for the Tax Periods on VRF and FSF. BAC also sues for a refund of FET paid on MMF, and to otherwise abate the assessment of FET on MMF. BAC alleges that the IRS has illegally assessed FET on MMF for the Tax Periods.

The government counterclaims to recover unpaid FET for tax years 2006 and 2007, plus penalties, accrued, unassessed interest, and statutory additions.

In simple terms, 26 U.S.C. § 4261(a) imposes a tax on "taxable transportation." *E.g.,* 26 U.S.C. § 4261(a). "Taxable transportation" means certain transportation by air. *E.g.*, 26 U.S.C. § 4262(a). Generally, the tax "shall be paid by the person making the payment subject to the tax," 26 U.S.C. § 4261(d), and "every person receiving any payment for . . . services on which a tax is imposed . . . shall collect the amount of the tax from the person making such payment," 26 U.S.C. § 4291. If, however, the tax is not paid at the time payment for transportation is made, then, to the extent that the tax is not otherwise collected, it must be paid by the carrier providing the initial segment of such transportation that begins or ends in the United States. 26 U.S.C. § 4263(c).[4]

BAC and the government both move for summary judgment. The government maintains that BAC lacks standing to bring this refund action with respect to the FET that it collected from the Aircraft Owners in its Flexjet program for VRF, FSF, and some MMF; that BAC provided "taxable transportation" to the Aircraft Owners in its Flexjet program

---

[4]If FET are not owed, a fuel tax still applies. Only FET are at issue in this litigation.

- 4 -

during 2006 and 2007; that the VRF, FSF, MMF, and lease payments BAC collected from the Aircraft Owners in its Flexjet program were payments for "taxable transportation"; and that BAC is liable for the additional FET assessed for the calendar quarters in tax years 2006 and 2007, as asserted in the government's counterclaim.

BAC contends that it is entitled to summary judgment because FET cannot legally be imposed on flights conducted by fractional aircraft owners who utilize BAC's management services, and because BAC's obligation to collect and remit FET on MMF was vague and speculative and violated *Central Illinois Public Service Co. v. United States*, 435 U.S. 21 (1978).

After the court heard oral argument on the motions, the United States District Court for the Southern District of Ohio decided *NetJets Large Aircraft, Inc. v. United States*, ___ F.Supp.3d ___, 2015 WL 313939 (S.D. Ohio Jan. 26, 2015). *NetJets* addresses several of the issues presented in the instant case, and it is related to another case—*Executive Jet Aviation v. United States*, 125 F.3d 1463 (Fed. Cir. 1997)—that is discussed extensively in the briefing. The court directed the parties to submit supplemental briefs stating their positions regarding whether this court should follow *NetJets*, and, if so, how *NetJets* affects the disposition of the parties' summary judgment motions. The supplemental briefs and responses have been filed,[5] and the parties' cross-motions for summary judgment are ripe for decision.

---

[5]BAC has also filed a motion for leave to file supplemental appendix. The court grants the motion and deems BAC's third supplement to appendix to be filed today.

- 5 -

II

Each party's summary judgment burden depends on whether it is addressing a claim or defense for which it will have the burden of proof at trial. To be entitled to summary judgment on a claim on which the nonmovant will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim or defense on which the party moving for summary judgment will have the burden of proof at trial, the party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that

- 6 -

the party is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

There are special presumptions and proof burdens that apply in tax cases, and the court discusses them below.

### III

The court turns first to BAC's claim for FET that it collected and paid on VRF and FSF charged to Aircraft Owners.  The government challenges BAC's standing to recover on this claim.[6]

---

[6]The government does not challenge BAC's standing with respect to the FET that BAC paid on MMF.  *See* D. 4/29/14 Br. 7 n.2 ("BAC's refund claim with respect to the small amount of excise taxes it paid with respect to the [MMF] is not covered by the provisions of section 6415 of the Code, in that BAC did not collect those amounts from the owners and lessees, but, rather, paid them itself."); D. 2/10/15 Br. 2 n.2. ("In the present case the plaintiff has sued for a refund of excise taxes it collected from the aircraft owners and lessees, who paid them with respect to the [VRC] and [FSF].  However, included in plaintiff's complaint are refund claims for a small amount of tax that plaintiff itself paid with respect to taxes on the [MMF] it received from its customers.  Those claims are obviously not subject to the Government's standing argument, as plaintiff did bear the economic burden of those small tax amounts."); Tr. Oral Arg. 10 (stating the government's position that BAC has standing to sue regarding the "several thousand dollars that they paid out of their pocket with respect to the [MMF]," but that BAC lacks standing to sue concerning the $17 million that it collected without paying FET).  Although the government challenges BAC's standing with respect to part of its MMF-based claims, the fact that BAC has standing as to at least another part is sufficient to permit the court to address the merits of the MMF-based claims.

A

The government contends that an entity that collects taxes imposed by § 4261 lacks standing to seek a refund unless it establishes that it has repaid the amount of the taxes to the person from whom it collected them, or it has obtained the person's consent to the allowance of the refund.  The government therefore maintains that BAC (the tax collector) cannot establish that it has prudential standing[7] because it cannot show that it repaid the FET that

---

[7]At oral argument, the government stated that it is probably relying on prudential (as opposed to constitutional) standing.  *See* Tr. Oral Arg. 4 ("It would probably be prudential standing, Your Honor.").  Although the court questions whether the government is relying on prudential standing—rather than simply contending that BAC has not met the requirements for bringing suit under 26 U.S.C. § 6415(a)—the court will use the term "standing" because it is used in the cases and by the parties.

Conceptually, however, prudential standing "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'"  *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)).  The doctrine asks

> whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999).  The government is not asking the court to enforce—nor is the court relying on—judicially self-imposed limits.  Instead, the court is considering whether BAC has satisfied the requirements of § 6415(a) that it has repaid the amount of the tax to the person from whom BAC collected it, or has obtained the consent of the person to the allowance of the credit or refund.  The question presented is simply whether BAC has a cause of action under the statute.  This has occasionally been referred to as "statutory standing," which is arguably a more accurate label than "prudential standing," because it places the focus of the inquiry on the statute itself.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S.Ct. 1377, 1387

it collected from the Aircraft Owners (the taxpayers) for VRF and FSF.  It posits that, although BAC alleges in its complaint that it will receive consents from the Aircraft Owners to the allowance of the refunds before the refunds are issued, BAC cannot show that it received these consents.  The government therefore contends that the court must dismiss BAC's claim for a refund of FET paid on VRF and FSF.[8]

BAC responds that the government's standing argument is "frivolous" in light of the Federal Circuit's decision in *Chicago Milwaukee Corp. v. United States*, 40 F.3d 373 (Fed. Cir. 1994), which BAC maintains is factually indistinguishable.  P. 5/20/14 Br. 2-3. According to BAC, *Chicago Milwaukee* held that a tax collector seeking a refund of the employee portion of employment tax was not required to certify employee repayment or consent before filing a refund claim because the law did not specify when the collector had to provide the consents of the underlying taxpayers; the consent requirement was not jurisdictional because it played no part in fairly apprising the IRS or the courts of the ground on which the refund was sought; requiring the tax collector to compensate 8,000 former

---

n.4 (2014).  But even the term "statutory standing" is somewhat of a misnomer, because the concept is not jurisdictional, and "does not implicate . . . the court's statutory or constitutional power to adjudicate the case."  *Id.*; *see also CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) ("[S]tatutory standing . . . is perhaps best understood as not even standing at all.").  Rather, the inquiry presents a straightforward question of statutory interpretation: whether BAC has met the requirements for bringing suit under § 6415(a).

[8]The government acknowledges that 26 U.S.C. § 6415(a) does not bar a refund, and a claimant can recover a refund, where the claimant shows that it did not collect the tax and has itself borne the economic burden of the tax.

employees or secure their consent before filing a refund claim imposed a harsh burden without good reason; and the court of appeals had jurisdiction to consider the merits of the tax collector's refund claim before requiring compliance with the consent requirement, that is, the tax collector could demonstrate compliance with the consent requirement after the district court determined the merits of the collector's refund claim.

BAC also posits that, in Revenue Ruling 2009-39 (which BAC acknowledges is neither legal precedent nor entitled to deference by the courts), the IRS favorably cited *Chicago Milwaukee* and adopted its holding as IRS administrative policy, and that the IRS never challenged BAC's standing or raised this argument while administratively auditing BAC. It maintains that this strongly suggests that the IRS does not support the standing argument now being raised by the U.S. Department of Justice. BAC argues that the court should reject the government's standing challenge, which it contends directly contradicts the IRS's own public announcements.

B

The court holds that BAC lacks standing to recover FET that it collected and paid on VRF and FSF charged to Aircraft Owners, because it has failed to establish that it either repaid the amount of the FET on VRF and FSF that it collected or that it obtained the consents of the Aircraft Owners.

26 U.S.C. § 6415(a) provides:

> Credit or refund of any overpayment of tax imposed by section 4251, 4261, or 4271 may be allowed to the person who collected the tax and paid it to the Secretary [of the Treasury] if such

- 10 -

> person establishes, under such regulations as the Secretary may
> prescribe, that he has repaid the amount of such tax to the person
> from whom he collected it, or obtains the consent of such person
> to the allowance of such credit or refund.

Under the law of this circuit, "[i]f it is determined that Plaintiff has not borne the economic

burden—it is admitted that he did not make the refund fund or obtain consents required by

26 U.S.C. § 6415—that ends the suit, since Plaintiff would then have no standing to sue and

the Court would not reach the merits." *McGowan v. United States*, 222 F. Supp. 329, 330

(S.D. Fla. 1962) (citing Fifth Circuit cases),[9] *aff'd*, 323 F.2d 655 (5th Cir. 1963).[10]  It is

undisputed that BAC has neither repaid the amount of the FET on VRF and FSF to the

Aircraft Owners from whom BAC collected them, nor has it obtained consents of the Aircraft

Owners.

    BAC's reliance on *Chicago Milwaukee* is misplaced.  First, it is not the law of the

Fifth Circuit.  Second, the decision does not address the requirements of 26 U.S.C. § 6415.

Although there are similarities between § 6415 and the provision of the Internal Revenue

---

[9]The district court in *McGowan* found on remand following the Fifth Circuit's reversal
in *McGowan v. United States*, 296 F.2d 252 (5th Cir. 1961), that the plaintiff *did* bear the
economic burden of the tax and therefore had standing, although it largely ruled against the
plaintiff on the merits.  *McGowan*, 222 F. Supp. at 331.

[10]The Fifth Circuit's opinion states in its entirety:

> The facts involved in this appeal and the applicable law are well
> set forth in the findings and conclusions of the district court.
> 222 F.Supp. 329.  We are in agreement with the district court
> and its judgment is Affirmed.

*McGowan v. United States*, 323 F.2d 655, 655 (5th Cir. 1963) (per curiam).

Code (26 U.S.C. § 7422(a)) and the Treasury regulation issued thereunder (Treas. Reg. § 31.6402(a)-2(a)(2)) that *Chicago Milwaukee* addresses, there are material differences as well.

In *Chicago Milwaukee* the question was whether Treas. Reg. § 31.6402(a)-2(a)(2) imposed a jurisdictional requirement under § 7422(a).  *Chi. Milwaukee*, 40 F.3d at 375.  This was material because the plaintiff brought suit under § 7422(a), which waives sovereign immunity from refund suits, provided the taxpayer files a qualifying refund claim.  *See id.* at 374.  The statute "imposes, as a jurisdictional prerequisite to a refund suit, filing a refund claim with the IRS that complies with IRS regulations." *Id.*  It was necessary for the Federal Circuit to interpret Treas. Reg. § 31.6402(a)-2(a)(2) to decide whether it imposed a jurisdictional requirement, and the court ultimately concluded that it did not. *Id.* at 375.  But Treas. Reg. § 31.6402(a)-2(a)(2) provided: "Every [administrative] claim filed by an employer for refund or credit of [RRTA] tax . . . collected from an employee *shall include a statement* that the employer has repaid the tax to such employee or has secured the written consent of such employee to allowance of the refund . . . ." *Id.* (emphasis added; bracketed material and ellipses in original) (quoting Treas. Reg. § 31.6402(a)-2(a)(2)).  By contrast, 26 U.S.C. § 6415 does not merely require *a statement* that the tax collector has repaid the tax or obtained the taxpayer's consent; it requires that the party seeking a credit or refund *establish* under the applicable regulations that it has repaid the amount of the tax to the taxpayer or has obtained the taxpayer's consent.  This is an important distinction because in *Chicago Milwaukee* the Federal Circuit interpreted Treas. Reg. § 31.6402(a)-2(a)(2) as a certification requirement and 26 U.S.C. § 7422(a) as a notice provision. *Chi. Milwaukee*, 40

F.3d at 375.  The court explained that Treas. Reg. § 31.6402(a)-2(a)(2) specified that the claim must include a certification, but the regulation did not specify when the employer must provide the certification, and it neither required nor prohibited including the certification at the time of filing, *id.*; the regulation did not indicate whether the refund claim must include the certification when filed, or whether the employer might provide certification after filing, and, if certification need not have accompanied the claim when filed, then it did not impose a jurisdictional filing requirement under 26 U.S.C. § 7422(a); the Court of Claims (the Federal Circuit's predecessor) had construed § 7422(a) as a notice provision, suggesting that the § 31.6402(a)-2(a)(2) certification need not accompany the refund claim when filed; if a claim fairly apprised the IRS of the ground on which recovery was sought, then the claim was adequate for the purposes of bringing suit under § 7422(a); and the Federal Circuit's precedent militated against treating § 31.6402(a)-2(a)(2) as imposing a jurisdictional requirement, *id.*; certification of repayment or consent played no part in fairly apprising the IRS of the ground on which recovery was sought, because the question whether an employer had repaid the employee portion or obtained consent provided no information about whether an over payment of taxes had in fact occurred; and, if a party submitted the certification after filing, it would not surprise the IRS as to the basis for the claim.  Therefore, treating § 31.6402(a)-2(a)(2) as jurisdictional would not advance the policies expressed in 26 U.S.C. § 7422(a).  *Id.*[11]  But the reasoning of *Chicago Milwaukee*—applied in the context of a statute

---

[11]The Federal Circuit also relied on a decision of its predecessor, the Court of Claims, in *IBM v. United States*, 343 F.2d 914 (Ct. Cl.1965), and on the views of the IRS as set forth

- 13 -

and regulation construed, respectively, as a certification provision and a notice provision—is distinguishable from a statute that requires that the taxpayer *establish* that the prerequisites to suit have been satisfied.[12]

BAC therefore lacks standing to recover FET that it collected from Aircraft Owners and paid on VRF and FSF, because it has not established that it repaid these taxes to the Aircraft Owners or that it obtained the necessary consents from them.  Accordingly, the court dismisses this claim.

---

in a General Counsel Memorandum.  *Chi. Milwaukee*, 40 F.3d at 375-76.  In *IBM* the court held that a statute imposing a similar certification requirement (§ 6416(a)(1)(C)) did not require certification on claim filing.  *Id.* at 375.  In the General Counsel Memorandum, the IRS stated that it viewed the specific certification requirement at issue in *Chicago Milwaukee* as non-jurisdictional.  *Id.* at 376.  Neither of these additional grounds relates specifically to 26 U.S.C. § 6415.

[12]In *NetJets* the court held that the plaintiff had standing under § 6415(a).  *NetJets*, 2015 WL 313939, at *7-8.  The court declines to follow *NetJets* in this respect.  First, *NetJets* relied on *Chicago Milwaukee* to hold that § 6415(a) does not specify when its requirements must be satisfied.  *Id.* (quoting *Chi. Milwaukee*, 40 F.3d at 375).  For reasons this court explains above, it concludes that *Chicago Milwaukee* is distinguishable.  Second, to the extent *NetJets* analyzed § 6415(a) as a mere certification requirement, *see id.* ("the Court agrees with those courts that require certification prior to any issuance of a refund, and not before the commencement of a lawsuit"), the court holds for the reasons explained above that § 6415(a) imposes a proof burden, not a mere certification obligation.  And third, although *NetJets* declined to follow non-binding Fifth Circuit authority, *see id.* at *8 (citing, *inter alia*, *McGowan*, 296 F.2d at 254-55), distinguishing it on the basis that it "did not address whether consent needed to be obtained before filing a lawsuit or before recovery," *id.*, this court *is* bound by Fifth Circuit precedent, which it considers indistinguishable from the present case.

IV

BAC also sues for a refund of FET that it paid on MMF charged to Aircraft Owners and for abatement of the unpaid portion of IRS assessments of FET on MMF.[13]  The government counterclaims for unpaid FET for tax years 2006 and 2007, plus penalties, accrued, unassessed interest, and statutory additions.

The government moves for summary judgment dismissing BAC's MMF-based claims and establishing its entitlement to recover on its counterclaim for unpaid FET.  It contends that, during 2006 and 2007, BAC provided "taxable transportation" to Aircraft Owners as part of its Flexjet program; that the MMF were payments for "taxable transportation"; and that BAC is liable for additional FET assessed for the calendar quarters in tax years 2006 and 2007, as reflected in the Certificate of Assessments, Payments, and Other Matters (Form 4340).

BAC moves for summary judgment, maintaining that it is entitled to a refund of FET paid, and the abatement of FET owed, on MMF.  First, it contends that FET cannot be imposed on flights conducted by the Aircraft Owners because, under § 119.33 of the Federal Aviation Regulations ("FARs"), BAC is prohibited as a non-U.S. citizen from carrying passengers for compensation or hire; the only litigated case, *Executive Jet*, 125 F.3d 1463, supports BAC's position in that the government conceded that FET do not apply to MMF;[14]

_____

[13]BAC has standing to pursue at least part of this claim.  *See supra* note 6.

[14]As the court explains below, the initial part of BAC's argument concerning *Executive Jet* is devoted to showing why, in BAC's view, the decision does not apply to

- 15 -

under pertinent Revenue Rulings, BAC is not providing taxable transportation to the Aircraft Owners; and there have been no changes in the law to support the conclusion that FET need to be paid on MMF.  Second, it posits that its obligation to collect and remit FET on MMF was vague and speculative and violated *Central Illinois* and the Duty of Clarity.

Although the government and BAC both move for summary judgment, their motions are not mirror images.  Some issues are logically considered before others because of their potential to moot other issues.  Accordingly, before turning to the ultimate questions whether the MMF that Aircraft Owners paid BAC were for taxable transportation and whether the IRS is entitled to recover on its counterclaim for unpaid FET, the court will address other grounds that, if meritorious, would pretermit the need to reach these issues.

V

BAC contends that it is entitled to summary judgment because FET cannot legally be imposed on flights conducted by fractional aircraft owners who use BAC's management services.

A

BAC argues, first, that, as a non-U.S. citizen (it is a Canadian citizen), it is prohibited under FAR § 119.33 from carrying passengers for compensation or hire, and therefore cannot provide "taxable transportation" to Aircraft Owners as part of its Flexjet program on which FET are owed.  BAC contends that it is not a United States citizen; it is therefore prohibited

_____

BAC.  Regarding MMF, however, BAC contends that, even if *Executive Jet* applies, it supports BAC's position given the concession made by the government in that case.

by FAR § 119.33 from carrying passengers for compensation or hire; 26 U.S.C. § 4083(b) defines "commercial aviation" as "use of an aircraft in a business of transporting persons or property for compensation or hire by air"; the legal standard "for compensation or hire" is therefore used for both the relevant FARs and FET; because BAC is legally prohibited by the FARs from providing air transportation "for compensation or hire," it cannot engage in air transportation "for compensation or hire" for purposes of FET; the Federal Aviation Administration ("FAA"), the agency that enforces the FARs, has not suggested that BAC is illegally conducting commercial aviation; instead, the FAA has decided that a fractional aircraft ownership program like BAC's that provides management services does not constitute providing air transportation "for compensation or hire"; the FAA has therefore decided that BAC is engaged in providing management services, not commercial aviation that is subject to FET; and the government's position directly conflicts with the FAA's licensing of BAC, because BAC must have an Air Carrier Certificate to engage in commercial aviation, the FAA has only licensed BAC to manage fractionally owned aircraft under the noncommercial rules of the FARs, not to engage in "commercial aviation," and this licensing precludes BAC from engaging in taxable commercial transportation as a matter of law.

In reply to the government's opposition, and in a post-*NetJets* supplemental brief, BAC refines its position somewhat.  It posits that the factual, not legal, conclusions of the FARs are relevant when analyzing whether BAC is engaged in taxable transportation. Relying on *Commissioner v. Idaho Power Co.*, 418 U.S. 1 (1974), and *Sprint Corp. v.*

*Commissioner*, 108 T.C. 384 (1997), in which the Supreme Court of the United States and the U.S. Tax Court held that agency regulations that governed the taxpayers' accounting practices in turn controlled how taxes were to be calculated, BAC maintains that the court should strongly consider the fact-finding of the FAA, which is the administrative agency that regulates BAC in its particular industry and that has expertise regarding whether BAC provides bona fide management services or commercial charter services, a matter on which the IRS has no expertise. BAC contends that, even if the court decides that the FARs are not determinative when deciding how 26 U.S.C. § 4261 is to be interpreted legally, they are entitled to some weight when deciding as a factual matter whether BAC is providing noncommercial management services to the Aircraft Owners or is engaged in carrying passengers for compensation or hire. BAC also asserts that the FARs must be applied to this case because there are no conflicting Treasury regulations. It posits that the FARs are more than simple regulations that only apply legal standards for aviation safety, as evidence by the preamble to the 2003 FARs, which contains factual findings explaining why certain rules were adopted.

B

The court holds that BAC's reliance on the FARs is misplaced because they are not tax regulations. To paraphrase the *NetJets* court, "critically, [BAC] offers no authority—and the Court knows of none—to support the contention that the FARs—which are *safety regulations*—are 'controlling' or 'applicable' in a *tax dispute*." *NetJets*, 2015 WL 313939,

at *11.[15]   As *NetJets* explained:

> The IRS has long considered its application of the tax code independent from the FAA's safety rules. In 1978—well before this dispute—the IRS issued a revenue ruling stating that "[t]he status of an aircraft operator as a 'commercial operator' under [FAA] regulations is not determinative in applying the aviation fuel and transportation taxes imposed by section[ ] . . . 4261 . . . of the Code." Likewise, in promulgating the 2003 FARs at issue here, the FAA recognized *Executive Jet*'s holding that "fractional ownership programs are commercial operations for *tax purposes,*" but announced that "[t]ax law does not govern *safety rules.* The FAA considers fractional ownership programs private operations *for safety and operational control purposes.*" Thus, even in promulgating the very regulations that NetJets relies upon, the FAA did not claim to change how the tax law applies.
>
> Cementing the conclusion that the FARs did not change the application of the tax code, Congress amended 26 U.S.C. § 4261 in 2012 to temporarily exclude fractional ownership programs. For periods beginning April 1, 2012 and ending September 30, 2015, fractional ownership aircraft programs are not subject to § 4261 but instead a special fuel tax surcharge. This action would be unnecessary if the FARs already took the NetJets program out of § 4261's reach indefinitely. Though NetJets highlights two comments in the amendment's legislative history stating that the amendment was designed to "clarify[] and reaffirm that fractional aviation is non-commercial aviation," the statutory text unambiguously applies the amendment prospectively and for a limited time—not retroactively to cover the time period at issue here. Thus, the Court concludes that NetJets provides taxable transportation.

*Id.* at *11-12 (citations omitted; alterations in original). The reasoning of *NetJets* is well

---

[15]In *NetJets* the court addressed the FARs for purposes of deciding whether they impacted the Federal Circuit's decision in *Executive Jet*, which the government relied on to argue collateral estoppel. *See NetJets*, 2015 WL 313939, at *9-12. This difference does not affect this court's agreement with *NetJets* in this respect.

supported and applies equally to the present case.

Nor is this court persuaded by BAC's reliance on *Idaho Power* and *Sprint*, or by what BAC characterizes as FAA factual findings. In *Idaho Power* the Court addressed whether, for federal income tax purposes, a taxpayer was entitled under one provision of the Internal Revenue Code to deduct from gross income depreciation on equipment the taxpayer owned and used in constructing its own capital facilities or whether the capitalization provision of another section of the Code barred the deduction. *Idaho Power*, 418 U.S. at 3. In deciding this question, the Court held:

> Some, although not controlling, weight must be given to the fact that the Federal Power Commission and the Idaho Public Utilities Commission required the taxpayer to use accounting procedures that capitalized construction-related depreciation. Although agency-imposed compulsory accounting practices do not necessarily dictate tax consequences, they are not irrelevant and may be accorded some significance.

*Id.* at 14-15 (citation omitted).

In *Sprint* the Tax Court addressed whether certain expenditures qualified for the investment tax credit and depreciation, and the proper classification as recovery property of certain telecommunications equipment [known as "drop and block"]. *Sprint*, 108 T.C. at 385. In addressing the classification question, the court relied in part on *Idaho Power* to hold:

> Public utilities, whose rates are often mandated by expenses, are routinely required to utilize uniform systems of accounting promulgated by regulatory agencies. For Federal tax purposes, if the generally accepted method of accounting of a taxpayer is made compulsory by a regulatory agency, and the method clearly reflects income, it is virtually presumed to be valid for Federal tax purposes.

*Id.* at 403-04 (citations omitted).

*Idaho Power* and *Sprint* support the premise that a taxpayer should be able to rely for tax purposes on accounting methods and practices that are dictated by another government regulatory agency.  They do not support the broader contention that one agency's general, non-tax-related regulations of an industry should be permitted to regulate another agency's collection of taxes.  Were this so, it would be necessary for Treasury regulations, if not perhaps the Internal Revenue Code itself, to account for myriad regulations adopted by other federal and state agencies that were not promulgated for a tax-related purpose but could nevertheless negatively (even unintentionally) impact the collection of taxes.

As for BAC's reliance on FAA factual findings, BAC cannot show that the FARs actually impose requirements that should be accorded some significance (*Idaho Power*) or be presumed to control for Federal tax purposes (*Sprint*).  This is so at least for the reason that, when the FAA adopted its final rule on the regulation of fractional aircraft ownership programs and on-demand operations in 2003, it explicitly distinguished the regulation of safety and operational control from how tax law might apply.

When the FAA issued its final rule, it addressed the public comments to the proposed rule.  *See* Final Action on the Regulation of Fractional Aircraft Ownership Programs and On-Demand Operations, 68 Fed. Reg. 54520, 54521, 2003 WL 22134765 (Sept. 17, 2003).  As the FAA noted, "[o]ne commenter cite[d] a U.S. Federal Circuit court ruling [*Executive Jet*, 125 F.2d 1463] that held a fractional ownership program to be a 'commercial operation' for certain tax purposes and question[ed] how the FAA [could] ignore this ruling."  *Id.* at 54522,

2003 WL 22134765.  The FAA explained why it had placed the rules governing fractional

ownership programs under part 91.  *Id.*  It stated that it recognized that fractional ownership

programs contained elements of private ownership and use of a management company that

were similar to a traditional management company operation under part 91; that they

provided aviation expertise and services to the owner and the program manager and did not

hold themselves out to the public to provide air transportation; that they differed from the

traditional management company model in the size and complexity of the program

operations, reducing the individual owner's ability to exercise operational control; and that

the appropriate approach was to regulate fractional ownership programs under part 91, but

to define operational control responsibilities and procedures and to prescribe added safety

requirements appropriate to the size and complexity of those operations. *Id.* at 54522-23,

2003 WL 22134765.  The FAA then responded to two specific comments, stating that it

viewed fractional ownership programs to be private operations and therefore not subject to

the commercial transport standards and definition.  It noted that, in *Executive Jet*, the Federal

Circuit had determined that fractional ownership programs were commercial operations for

tax purposes.  But significantly, it then explained that "Tax law does not govern safety rules.

The FAA considers fractional ownership programs private operations for safety and

operational control purposes."  *Id.* at 54523, 2003 WL 22134765. BAC should not be

permitted to rely on factual findings in FARs that, not only were adopted without apparent

consideration of their tax consequences, but that themselves rejected any potential

application of tax law.

Absent some reasonable basis to reach a contrary conclusion—and the court has discerned none here—it is possible for an entity to be classified one way for tax purposes and another way for other purposes: here, for purposes of aircraft safety and operational control. The court therefore rejects BAC's attempt to rely on the FARs to establish as a matter of law that, as a non-U.S. citizen, it does not provide "taxable transportation" to Aircraft Owners as part of its Flexjet program.

## VI

The court now turns to BAC's contention that the only litigated case—*Executive Jet*, 125 F.3d 1463—supports its position. This argument consists of two components. First, BAC asserts that *Executive Jet* supports BAC's position because the decision is distinguishable on various grounds. This argument would probably be more accurately re-framed as asserting that *Executive Jet* does *not* support the conclusion that FET are owed. Regardless how it is phrased, this ground is insufficient of itself to support summary judgment in BAC's favor, so the court will not address it.

Second, BAC contends that, even if *Executive Jet* applies, it supports BAC's position because the government conceded in *Executive Jet* that FET are not owed on MMF. This contention is not developed in the briefing as an independent basis for granting summary judgment. The government does not address the argument in response to BAC's motion, although in its brief in support of its own summary judgment motion, it refers to the decision of the Court of Claims in *Executive Jet*, stating that "[t]he trial court didn't understand why the IRS hadn't assessed the excise tax on the monthly management fee, since it wasn't

asserted in that case, so it assumed that it was the Government's then current stipulation as to the proper measure of the tax," and that "[a]t present it is impossible to determine why the Government did not press for applying the tax to the monthly management fee in that case, as the Government trial attorney is now deceased." D. 4/29/14 Br. 24 n.38. BAC does not address *Executive Jet* in its reply brief in support of its summary judgment motion, except to assert that the decision either is no longer good law or is strictly limited to its facts. And in its supplemental brief filed after the *NetJets* opinion was issued, and in its response brief to the government's post-*NetJets* supplemental brief, BAC focuses on *Executive Jet* to support its Duty of Clarity argument. *See, e.g.,* P. 2/24/15 Br. 3 (stating that "during the litigation in [*Executive Jet*], the United States entered in to a stipulation wherein it concede[d] that Monthly Management Fees ('MMFs') . . . are NOT part of the FET tax base," and that "the United States' litigating position in [*Executive Jet*], the United States' stipulations in [*Executive Jet*], and other subsequent conduct of the IRS are applicable to the Duty of Clarity analysis."). A similar reliance on *Executive Jet* is found in BAC's opening summary judgment brief. *See, e.g.,* P. 4/29/14 Br. 38 & 38 n.19 (relying on *Executive Jet* in support of Duty of Clarity argument).

BAC does not contend that the government's position in *Executive Jet* that FET are not owed on MMF precludes the government from taking a different position in this case. The Court of Claims assumed that this was "the government's current stipulation as to the proper measure of the tax." P. 4/29/14 Br. 30 (quoting *Executive Jet Aviation v. United States*, No. 95-7 (Ct. Claims Mar. 29, 1996)). Although the *Executive Jet* decision arises in

multiple contexts in this case and plays roles of varying importance, at least insofar as the opinion pertains to FET on MMF, BAC appears to rely on *Executive Jet* primarily to bolster its analysis of the Duty of Clarity.  Accordingly, the court concludes that BAC is not entitled to summary judgment based on *Executive Jet* alone, and it will consider BAC's reliance on *Executive Jet* when analyzing BAC's contention that the IRS violated its Duty of Clarity.

VII

BAC contends that the IRS is precluded by the Duty of Clarity from recovering FET on MMF.

A

BAC maintains that holding it liable for FET on MMF would violate the Duty of Clarity and that FET assessed on MMF must be refunded and abated.  It argues that it has been the target of three consecutive tax audits of the exact issue (whether MMF are subject to FET) for a 13-year period; the IRS's initiation of the third audit, which forms the basis of this litigation, surprised BAC given the IRS's concession of this exact issue in both of the two prior IRS administrative audits spanning the 11-year period (1995 through 2005) that immediately preceded the Tax Periods; the IRS's institutional determination in both prior audits was clear—MMF paid to BAC by the Aircraft Owners were not subject to FET; the facts and law have remained unchanged since the prior audits; the IRS is attempting to impose FET on the same Aircraft Owners, who own the same aircraft, utilize the same dry-lease exchange with other Aircraft Owners, and pay the same MMF that the IRS conceded in the prior audits for the immediately preceding tax quarter; during the Tax Periods and

approximately one month before the due date of the first tax return for the Tax Periods, the IRS issued a concession letter to BAC in the prior audit explaining that the IRS was conceding this exact issue in favor of BAC; consequently, BAC collected and remitted FET and filed its tax returns for the Tax Periods consistent with the results of the prior two audits; BAC, as the tax collector of FET owed by others, was left to sift through the facts of the various rulings and prior audits, which did not provide precise and non-speculative notice of a duty to collect FET; BAC carefully sifted through the facts of its two prior audits, the rulings, and *Executive Jet* and determined that its situation was materially indistinguishable from Revenue Ruling 58-215, 1958-1 C.B. 439, 1958 WL 10832; and, under a reasonable person standard, no FET were due on MMF.

BAC contends on the following six grounds that it is entitled to a refund and abatement of FET on MMF: first, the IRS expressly approved BAC's tax treatment of MMF in the two prior audits that involved the 11 preceding years; second, the IRS's concessions were substantial, involving more than $40 million in FET; third, after conceding this issue in the prior audits during the Tax Periods, and a few weeks before the first tax return for the Tax Periods was due, the IRS failed to advise BAC that it was changing its position that FET were due on MMF; fourth, the IRS stipulated in *Executive Jet* that FET did not apply to MMF (which the *Executive Jet* court noted in its opinion), and at no time has the government issued a statement deviating from this position; fifth, more than 50 years ago, in Revenue Ruling 58-215, the IRS opined that FET do not apply to any fees—including MMF—paid by fractional aircraft owners to management companies; and, sixth, the IRS admits in its IRS

Audit Technique Guide (2008), concerning fractional management companies such as BAC, that neither title 26 of the United States Code nor any IRS published guidance addresses the issues discussed in this chapter, and these issues include the application of FET to the MMF at issue.  BAC posits that, at most, the results of the two prior audits spanning the 11-year period (1995 through 2005) and the IRS's concession of the MMF issue in *Executive Jet* stand for the proposition that BAC must collect and remit FET on VRF only, which BAC has done, and, absent clear guidance, the IRS cannot retroactively impose secondary FET liability on BAC for MMF collected from the Aircraft Owners.  BAC maintains that clear guidance would have allowed it to determine that it was liable to collect and remit FET on these fees; that, since the time it filed this suit, the IRS has conceded the exact issue in a lawsuit involving one of BAC's direct competitors; and that the Duty of Clarity prevents the IRS from assessing FET from BAC on payments of MMF.

The government argues in response that, since at least February 14, 2004, BAC has been aware that the IRS required that it collect excise taxes from the owners in its Flexjet program based on VRF, FSF, MMF, and lease payments.  It posits that BAC has neither received inconsistent treatment from the IRS nor, for the years at issue, has it been unaware that the IRS expected BAC to collect FET on MMF.  The government maintains that, as part of the examination of the FET returns of Jet Solutions LLC ("Jet Solutions"), BAC's predecessor, for periods in 1995 through 1997, the parties agreed that a Technical Advice Memorandum ("TAM") would be requested from the IRS National Office addressing whether § 4261 FET applied to the MMF, VRF, and other fees that fractional interest owners

in the Flexjet program paid to Jet Solutions.  Technical Advice Memorandum 143115-03 (Feb. 17, 2004) ("2004 TAM") was issued on February 17, 2004, well before any period at issue in this case, and it held that all of the fees received by the manager in the Flexjet program were subject to FET.  The government notes that BAC has complained about the TAM request process, asserting that new facts and legal arguments were included unilaterally by the IRS and that no reference was made to the new FARs in a revised IRS request.  But the government contends that BAC has failed to point out that, before the TAM was issued, a conference was held at which Jet Solutions and BAC could have addressed, if they did not in fact address, the alleged deficiencies in the request.  The government argues that the TAM clearly relies on the actual facts of this case and also clearly advises BAC that the various fees it received from the fractional interest owners in the Flexjet program were subject to § 4261 FET.  According to the government, although BAC might disagree with the conclusions reached in the TAM or the process by which it was obtained, BAC was clearly aware when the TAM was issued, and thereafter, that the IRS considered all of the fees BAC or Jet Solutions received in the Flexjet program to be subject to FET.  And a March 1, 2007 letter from IRS Appeals stated that the "underlying issue [was] very strong for the Government," D. 5/20/14 Br. 10 (quoting P. 5/20/14 App. 19), which clearly reconfirmed the requirement to collect FET.

In response to BAC's assertions that the IRS has previously conceded that FET are not owed on MMF, the government contends that the relief that BAC and Jet Solutions received in previous examinations regarding the payment of FET on MMF was based on the

concept of unfair comparative disadvantage, which no longer applies.  The government disputes BAC's assertion that the IRS previously considered MMF to be nontaxable under § 4261.  It maintains that its concessions during the examinations of the returns of Jet Solutions for periods in 1995 through 1997, and of BAC for periods in 1998 through 2005, were based solely on the concept of unfair competitive disadvantage, which was made clear in the March 1, 2007 letter from IRS Appeals and confirmed in the testimony of the IRS Appeals officer involved with both previous examinations, who testified that this rationale was based on the treatment given MMF in *Executive Jet*.  According to the government, during the years at issue here, Executive Jet Aviation's fractional interest program (called NetJets) was the largest fractional interest program in the United States (Flexjet was the third largest).[16]  For some or all of the calendar quarters in 2003 through 2009, the IRS assessed § 4261 FET against the NetJets entities for MMF charges made to participants in their fractional interest programs.  The government maintains that, because the IRS has assessed, and is now attempting to collect, FET on MMF from the largest of BAC's competitors for the same years at issue here, it cannot be said that BAC will be placed at a competitive disadvantage if it is also required to collect FET based on MMF.

## B

At the outset, the court notes that, although BAC uses the phrase "Duty of Clarity," *see* P. 4/29/14 Br. 36 ("This obligation is called the government's 'Duty of Clarity.'"), the

---

[16]The district court's decision in *NetJets* prompted this court to request additional briefing.

phrase is not found in either *Central Illinois*, 435 U.S. 21, or *General Elevator v. United States*, 20 Cl. Ct. 345, 353 (1990), the cases that BAC cites to support such a duty.  The court's own research indicates that, although federal courts have sporadically used the phrase "Duty of Clarity," they have never done so in this context or for the purpose for which BAC employs it.  Even so, the government does not argue that there is no Duty of Clarity, or that, regardless of the doctrine's name, it had no duty to give clear guidance to a tax collector in the circumstances of this case; indeed, it maintains that it did give such guidance.  The court will therefore use the phrase "Duty of Clarity."

In *Central Illinois* the Supreme Court addressed the question whether an employer who reimbursed certain employee lunch expenses was required to withhold federal income tax on such reimbursements, that is, whether the lunch reimbursements qualified as wages under the Internal Revenue Code.  *Cent. Ill.*, 435 U.S. at 21-22.  In holding that the employer was not required to withhold federal income tax, the Court rejected an expansive and sweeping definition of wages, *id.* at 31.  Noting that the withholding system standard was intentionally narrow and precise and that it had not been changed by Congress since 1942, but that administrative and other pressures had sought "to soften and stretch the definition," the Court stated:  "Because the employer is in a secondary position as to liability for any tax of the employee, it is a matter of obvious concern that, absent further specific congressional action, the employer's obligation to withhold be precise and not speculative."  *Id.* at 31.

In *General Elevator* the Court of Claims addressed whether an employer was entitled to recover withholding taxes on per diem allowances paid to certain construction workers.

*Gen. Elevator*, 20 Cl. Ct. at 347.  The issues before the court were whether the per diem

payments were "wages," and, if so, whether the employer, as withholding agent of the IRS,

had adequate notice that these payments were to be withheld as wages.  *Id*. at 351.  After the

Court of Claims found that the payments were wages, *id.* at 352, it addressed whether the

employer had sufficient notice of its duty to withhold taxes, *id.*  As does BAC in this case,

the employer relied on *Central Illinois* to contend that, without "clear and precise" notice that

there was a duty to withhold, no employer could reasonably have suspected that a

withholding obligation existed.  *Id.*

> Plaintiff argues that as a "deputy tax collector" or agent of the
> Government for purposes of withholding, its obligation to
> withhold must be clear.  Further, since no instructions from its
> principal were received, plaintiff argues it was under no
> obligation to withhold from the per diem payments at issue.
> Finally, plaintiff contends that to now find that it should have
> withheld on such payments would constitute a prejudicial
> retroactive imposition of the duty to withhold and would
> undermine the uniformity of the withholding system since the
> evidence shows that to date plaintiff is the only elevator
> company upon which the IRS has imposed this obligation.

*Id.* at 352-53.  The government argued in opposition that the employer had adequate notice

that the per diem payments were considered wages subject to employment taxes because it

knew about a specific revenue ruling (Rev. Rul. 76-453), and, although the ruling had been

suspended indefinitely and did not specifically cover the employer's practices, it served as

sufficient notice to alert the employer to investigate the law about possible withholding to

ensure that its per diem system was in compliance with the regulations.  *Id.* at 353.  The

government also argued that, even if the revenue ruling did not constitute notice, two other

- 31 -

rulings that related to "somewhat similar circumstances" provided sufficient notice as to the "possible" requirement of withholding on "travel allowances." *Id.* It also asserted that the employer had not followed the advice that its trade organization gave its members: that each employer should contact its own tax advisor concerning their expense arrangements. *Id*.

The *General Elevator* court ruled in favor of the employer on the notice issue. It began by holding that the employer, as "deputy tax collector," "must have adequate notice so that it will 'know what the IRS thinks the law is and therefore what actions they have to take.'" *Id.* (citing *Cent. Ill*., 435 U.S. at 31-32; *McGraw Hill, Inc. v. United States,* 623 F.2d 700 (Ct. Cl. 1980)). It then concluded that "[t]he facts in this case do not establish a precise and clear duty to withhold." *Id*. None of the revenue rulings that the government cited as providing adequate notice specifically applied to the circumstances of the employer's per diem arrangement. *Id.* And the suspension of the revenue ruling indicated to the employer that it did not have a duty to withhold. *Id.* at 354. Based on the court's review of the pertinent revenue rulings that the parties cited, the case law, and IRS informal administrative directions, it concluded that the employer had inadequate notice that it was required to withhold on per diem payments. "In sum, these rulings leave a speculative gap where plaintiff, when faced with ambiguous or inapplicable interpretations, cannot reasonably be held to have received the degree of notice the law requires." *Id.* The court also pointed out that the employer's trade organization had advised its members that per diem payments were not subject to withholding, and its review of the matter took into account an IRS agent's letter opinions, which specifically found that per diem payments were not subject to

- 32 -

withholding; that the IRS elected not to audit any other relevant elevator companies regarding per diem withholding even after auditing the employer; and that, if the issue were that clear cut against the employer, it would seem reasonable that the IRS would have already audited and sought recovery of such taxes from other, similarly-situated elevator companies. *Id.*

## C

The court holds that a reasonable trier of fact could only find from the summary judgment evidence that BAC was given notice of a precise and clear duty to collect FET on MMF, that is, that the notice was sufficient to apprise BAC about what the IRS thought the law was and therefore what actions BAC was required to take.

BAC relies on a host of factors that the court details above (including the Federal Circuit's decision in *Executive Jet*) to contend that it lacked sufficiently clear and precise notice of its obligation to collect FET on MMF.  But it is undisputed that, on February 14, 2004, before any Tax Period at issue in this case, the IRS notified BAC via the 2004 TAM that all of the fees received by the manager in the Flexjet program were subject to FET.  In other words, unlike in *General Elevator*, where the IRS apparently expected the employer to divine its tax collection obligations from such sources as a revenue ruling that had been suspended indefinitely and did not specifically cover the employer's practices, and two other rulings that related to "somewhat similar circumstances," in the present case the IRS stated its position unequivocally in a TAM involving the very conduct at issue in this litigation,

which was addressed to BAC's predecessor.[17]

"A technical advice memorandum represents an expression of the views of the Service as to the application of the law, regulations, and precedents to the facts of a specific case[.]" Treas. Reg. § 601.105(b)(2)(viii) (1987).  The 2004 TAM arose from an examination of Jet Solutions' excise tax returns.  BAC had an opportunity to participate in the TAM process at a December 5, 2003 conference.  The TAM identified the issue as "[w]hether the [MMF] or the [VRF], including the Additional Fees, paid to Taxpayer by aircraft owners are subject to the excise tax on amounts paid for taxable transportation under § 4261 of the Internal Revenue Code." D. 5/20/14 App. 82.  It concluded by clearly stating that "[b]oth the [MMF] and the [VRF], including the Additional Fees, paid to Taxpayer by aircraft owners are subject to the excise tax as amounts paid for taxable transportation under § 4261." *Id.*  In addition to conveying this conclusion, the TAM explained the rationale on which it was based. *Id.* at 86-87.

"[A] taxpayer that is subject to a particular TAM is entitled to rely on the IRS's position in the TAM until that holding is withdrawn, revoked, or modified." *NetJets*, 2015 WL 313939, at *14.

---

[17]In its reply brief, BAC asserts that it "never received prior notice that the IRS believed that the [MMF] were subject to FET."  6/3/14 Br. 13.  BAC's counsel made a similar assertion at oral argument.  *See* Tr. Oral Arg. 20 ("After they told us that you don't have to do anything else, they issued nothing telling us or the world that they were changing their position and now taxing management fees.").  It is difficult to understand how BAC can take this position given the undisputed summary judgment evidence to the contrary.

> [A TAM] is generally applied until it is withdrawn or until the conclusion is modified or revoked by a final decision in favor of the taxpayer with respect to that issue, the enactment of legislation, the ratification of a tax treaty, a decision of the United States Supreme Court, or the issuance of temporary regulations, final regulations, a revenue ruling, or other statement published in the Internal Revenue Bulletin.

Rev. Proc. 2014-2, 2014-1 I.R.B. 90.  The 2004 TAM was never withdrawn, modified, or revoked.  BAC was therefore entitled to rely on it when deciding whether to collect FET on MMF for the Tax Periods in question.[18]

BAC argues that the 2004 TAM *was* nullified because, after it was issued for the first audit cycle, the IRS conceded during the same administrative audit that BAC did not owe FET on MMF, and it conceded the same issue in the next audit cycle as well.  BAC maintains that these two concessions constitute a final decision in favor of the taxpayer that is subsequent and contrary to the 2004 TAM.  Based on the same two IRS concessions, BAC maintains that the 2004 TAM could not have provided "clear, non-speculative notice" for purposes of satisfying the Duty of Clarity.  P. 2/10/15 Br. 5.  It essentially contends that the IRS confused it when, after issuing the 2004 TAM, it conceded in the two audits that no FET were owed for two tax years (conceding millions of dollars in proposed FET assessments)

---

[18]At oral argument, the court asked BAC's counsel to give an example of how the IRS could have provided notice in a clear manner.  He responded that a Treasury regulation that stated that fractional management companies owed FET on MMF would have been sufficient.  Tr. Oral Arg. 19.  In the context of this case, and for purposes of evaluating the IRS's compliance with the Duty of Clarity, the court discerns no material distinction between the 2014 TAM, issued specifically to BAC's predecessor and on which BAC was entitled to rely, and a Treasury regulation.

and refunded more than $1.2 million of FET on MMF.

A reasonable trier of fact could not find in BAC's favor on these grounds. The evidence shows that, when the IRS Appeals officer wrote to BAC on March 6, 2007 conceding that FET were not owed, he stated, in relevant part:

> As I indicated in our discussion, I am recommending the excise tax on aircraft management fees issue be conceded in full by the Government for the tax periods indicated due to the unfair competitive disadvantage principle established by *International Business Machines Corp*., 343 F.2d 914 (Ct. Cl. 1965), and followed by *Sirbo*, 476 F.2d 981 (CA-2, 1973). No Form 906 closing agreement will be entered into because as I explained the underlying issue is very strong for the Government, but will be conceded for the periods indicated only for the reason stated above.

D. 5/20/14 App. 19.[19] The evidence therefore establishes that the IRS Appeals officer was addressing excise taxes on aircraft management fees for the tax quarters ending June 30, 1998 through December 31, 2005, i.e., periods prior to the ones at issue in this lawsuit, and that the concession was not based on any agreement with BAC's position regarding whether FET were owed on MMF. To the contrary, the letter asserted that the government's position was "very strong." BAC could not therefore have reasonably interpreted the letter to take any position other than this: with respect to tax years *prior to* the ones in question in this litigation, the IRS was conceding that FET were not owed, and it was entering into this

---

[19]BAC objects to this letter on the ground that it is inadmissible under Fed. R. Evid. 408. The court concludes that Rule 408(a) does not preclude the government from using the statements in the letter, including for the purpose of demonstrating that the IRS did not violate the Duty of Clarity.

concession *based solely* on the "unfair competitive disadvantage principle."[20]   The 2004

TAM was therefore not compromised in the least.

BAC also relies extensively on Technical Advice Memorandum 93-14-002 (Dec. 22,

1992) ("1992 TAM"), which was issued to NetJets.[21]   BAC contends that, although the 1992

TAM was issued to Netjets, it was never revoked, it became the government's litigating

position in *Executive Jet*, the government stipulated in *Executive Jet* that FET were not owed

---

[20]BAC at once challenges whether the IRS actually did so for this reason and asserts that "the reasoning behind [the IRS's] concessions in the two prior audits is unimportant." P. 6/3/14 Br. 14-15.  Although there is ample record evidence that the IRS made this concession based on the taxation of MMF paid as part of Executive Jet's fractional interest program (most recently the subject of the *NetJets* case), the court agrees with BAC's assertion that the IRS's precise reasoning (or motivation) is "unimportant."  This is because what matters for purposes of applying the Duty of Clarity is that BAC was on notice that the IRS, when conceding the issue for the tax periods in question, was not questioning the merits of whether FET were owed on MMF but was conceding the point for reasons unrelated to the merits.  Indeed, the IRS opined in the letter that the government's position was "very strong."

BAC also relies on a June 7, 2006 memorandum of IRS Manager John S. Munholland, in which he stated that the concessions by the IRS were based upon a legal conclusion that MMF were not payments for taxable transportation and therefore not subject to FET.  This reliance is misplaced for purposes of applying the Duty of Clarity because it is based on a position taken in a document that was first produced after the fact—during discovery in this litigation.  It therefore could not have confused or misled BAC concerning its obligation to collect FET on MMF.

[21]In its supplemental brief addressing *NetJets*, BAC maintains that, although the *NetJets* court did not "specifically state that it [was] considering the issue of whether the Duty of Clarity prevent[ed] the IRS from assessing FET," P. 2/10/15 Br. 3, its analysis "is very relevant and beneficial to the analysis that this Court must perform in the case at hand for purposes of the Duty of Clarity," *id.* at 4.  The court concludes, however, that the *NetJets* court not only did not base its decision on the Duty of Clarity; it relied on several grounds that are unique to that case and the protracted FET dispute involving the IRS, NetJets, and Executive Jet.

on MMF, and it is relevant for purposes of the Duty of Clarity and whether the IRS gave

clear, non-speculative advice to BAC.  The court disagrees.

> Under § 6110(k)(3), a taxpayer may not rely on a TAM issued
> by the Service for another taxpayer.  In addition, retroactive or
> non-retroactive treatment to one member of an industry directly
> involved in a letter ruling or TAM does not extend to another
> member of that same industry, and retroactive or non-retroactive
> treatment to one client of a tax practitioner does not extend to
> another client of that same practitioner.

Rev. Proc. 2014-2, §13.04, 2014-1 I.R.B. 90, 2014 WL 16118.  Accordingly, because the

1992 TAM was issued to another taxpayer, BAC knew it could not rely on it.  Moreover, the

2004 TAM actually applied to BAC (it was issued specifically to BAC's predecessor).  BAC

could not have been confused about the clear directive found in the 2004 TAM.

In sum, regardless of what was happening in the industry, and regardless of the IRS's

concession concerning prior tax periods, the 2004 TAM provided clear and non-speculative

advice to BAC that it was obligated to collect FET on MMF.  The court therefore holds that

the government is entitled to summary judgment concerning BAC's Duty of Clarity

argument.[22]

## VIII

In its supplemental brief addressing *NetJets*, BAC contends that the *NetJets* court's

decision that NetJets is not required to collect and remit FET on MMF or FSF unequivocally

shows that the IRS is estopped from arguing that BAC is liable for failing to collect and remit

---

[22]Assuming *arguendo* that this is properly considered a separately pleaded cause of
action, the court reaches the same result.

FET on MMF or FSF.  BAC also contends that the IRS's position regarding BAC violates the doctrine of competitive disadvantage.

## A

BAC relies on the *NetJets* court's decision that NetJets is not required to collect and remit FET on MMF or FSF to contend that the IRS is estopped from arguing that BAC is liable for failing to collect and remit FET on MMF or FSF.  It cites its opening summary judgment brief in which it relied on the government's concession on MMF and FSF issues for one of BAC's competitors in *PlaneSense, Inc. f/k/a Alpha Flying, Inc. v. United States*, No. 1:11-CV-00136-PB (Distr. N.H. filed Mar. 22, 2011).  BAC also asserts that the IRS has announced that it will suspend the assessment of FET on owner flights on aircraft managed by aircraft management companies as of May 16, 2013, until the government issues clear authoritative guidance.  BAC posits that, now that the *NetJets* court has held that NetJets, which holds a 75% market share in the industry of fractional management services, did not have to collect and remit FET on MMF and FSF for a very large percentage of the aircraft management industry (over 75 percent), it has already been determined that MMF and FSF are not part of the FET tax base.  BAC cites an internal IRS memorandum in which an IRS manager stated (regarding the IRS's earlier concession to BAC on the FET issue) that it would violate the fairness doctrine/competitive disadvantage if NetJets, the largest member of the industry, did not have to pay FET while BAC was assessed FET.  BAC argues that because it and other fractional aircraft owners are similarly situated to other aircraft management companies and their aircraft owners, and these companies have not been

required to collect FET on MMF and FSF, BAC and the Aircraft Owners would be placed at a significant disadvantage to similarly-situated taxpayers if FET are imposed on BAC's MMF and FSF, which would violate the IRS's obligation to treat BAC similarly to its competitors.

## B

The court declines to grant BAC's summary judgment motion or deny the government's motion based on BAC's estoppel assertion.  Although BAC alleged an estoppel claim in its complaint, it did not brief estoppel in support of its own summary judgment motion or in opposition to the government's motion.  It is too late to raise estoppel for the first time in the context of the supplemental briefing that the court requested regarding a court decision that did not involve estoppel.[23]  And even if the court were inclined to consider the argument, BAC has failed in its supplemental brief to show how, as a consequence of the *NetJets* decision, the government is estopped from arguing that BAC is liable for tax for FET on MMF.  BAC's complaint alleges estoppel based on the contents of Revenue Ruling 58-285, on the government's concession of the non-applicability of FET to MMF in *Executive Jet* and in response to BAC's claim for a refund of FET on MMF for tax periods beginning July 1, 1995 and ending December 31, 1997, in an examination of that refund claim, and in a second examination that followed the refund claim.  BAC does not explain in its supplemental brief how the *NetJets* decision bolsters any of these grounds for alleging

_____

[23]*NetJets* involved *collateral* estoppel.  *See, e.g., NetJets*, 2015 WL 313939, at *9.  BAC is not relying on collateral estoppel.

estoppel against the IRS.

If anything, BAC's supplemental brief primarily relies on the *NetJets* decision, in combination with other predicates, such as the IRS's position in the *PlaneSense* litigation, to contend that the IRS's treatment of BAC violates the fairness doctrine and places BAC at a competitive disadvantage. The court declines to accept BAC's reliance on this doctrine.

As a threshold procedural matter, the court notes that the fairness doctrine/competitive disadvantage, which entered the case as the IRS's stated rationale for conceding that BAC did not owe FET on MMF for certain tax years, has become a basis for BAC's claim (or defense) that the IRS is barred from collecting FET for other tax years. But assuming that it qualifies as a claim (or defense), it is not found (or even mentioned) in BAC's complaint or in its answer to the government's counterclaim.

Moreover, BAC's reliance on the fairness doctrine/competitive disadvantage for the tax years in question is misplaced. As BAC recognizes in its brief, this doctrine is based on the principle that the IRS must treat similarly-situated taxpayers similarly. In *NetJets* the government in fact assessed FET on MMF, *NetJets*, 2015 WL 313939, at *17, and it alleged by way of a counterclaim that NetJets owed FET on MMF, *id.* at *7. The *NetJets* court ruled against the government on the MMF issue, but the IRS did not treat NetJets more favorably than it has BAC. It asserted in *NetJets*, as here, that FET were owed.

In *PlaneSense* the IRS settled with the taxpayer after asserting that FET were owed. Due to the settlement, the evidence in the summary judgment record related to the *PlaneSense* litigation is scant and largely limited to public documents. This evidence would

not permit a reasonable trier of fact to find that the IRS treated a similarly-situated taxpayer more favorably than it treated BAC for the tax years in question.  The proof is too sparse to make this finding.

BAC's contention that the IRS has announced that it will suspend the assessment of FET on owner flights on aircraft managed by aircraft management companies as of May 16, 2013, until the government issues clear authoritative guidance, is distinguishable.  This assertion is based on a Chief Counsel Advice that relates to an aircraft where the 100% aircraft owner has contracted with a management company to manage the aircraft.  The Chief Counsel Advice makes clear that it does not apply to fractional interest programs.

Finally, the court declines to base today's decision on the effect of the ruling in *NetJets*.  BAC reasons that, as a result of *NetJets*, a competitor with greater than 75% of the market share in the industry of fractional management services does not have to collect and remit FET on MMF.  When the decision in *NetJets* becomes final, however, it will be subject to appellate review.  Decisions in other circuits may also call it into question.  Therefore, although it is evident that this court agrees with *NetJets* in several respects, the court declines to accord *NetJets* the effect necessary to entitle BAC to relief based on that ruling alone.

IX

The court now turns to BAC's claim for a refund and abatement of FET on MMF and the government's counterclaim for unpaid FET.

A

The government contends that it is entitled to summary judgment because the

- 42 -

Commissioner of Internal Revenue's findings of tax deficiencies have a presumption of correctness; BAC, as the taxpayer, has the burden of proof of showing them to be wrong; a Certificate of Assessments, Payments, and Other Matters (Form 4340) is presumptive proof of a valid assessment where the taxpayer has produced no evidence to counter the presumption; nowhere in BAC's Protest, in its two sets of amended returns and its claim for refund, or in its complaint has it contested the actual amounts of the additional assessments made by the IRS for the calendar quarters in tax years 2006 and 2007; and BAC instead incorrectly asserts that no taxes were owed for these quarters because the monies received from the purchasers and lessees constituted management fees, not payments for taxable transportation.  The government maintains that, because BAC can produce no evidence to counter the presumption of correctness as to the IRS's findings, the court must hold that the additional assessments are correct, as stated in the government's counterclaim, and that BAC is liable for the amounts of the additional assessments reflected in the Certificate of Assessments, Payments, and Other Matters (Form 4340) for each of the calendar quarters in 2006 and 2007.

BAC asserts on several grounds that the government is not entitled to summary judgment and that BAC is entitled to summary judgment, including those urged in support of its own summary judgment motion, which the court has addressed and rejected above.  In addition to these grounds, BAC contends that FET are not owed on MMF because BAC was not engaged in commercial aviation and therefore was not providing taxable transportation. BAC posits on several grounds that the government is relying erroneously on the

"possession, command, and control" test.  It maintains that the appropriate standard, instead, is whether the fees are paid for "commercial aviation."  And because at no point does the government state or suggest that BAC was engaged in "commercial aviation," or address (referring to the FARs) that BAC is legally prohibited from engaging in "commercial aviation," the MMF that BAC charged were not subject to FET.  BAC also maintains that, under the FARs, it performed its services as the agent of the Aircraft Owners.  It challenges the government's assertion that it is an owner or lessee of each program aircraft, that the Aircraft Owners have no choice as to whether to appoint BAC as the manager, and that the Aircraft Owners' ownership interests in their aircraft are highly fettered.  BAC posits that the summary judgment evidence shows that the Aircraft Owners, not BAC, are in operational control.  It argues that the IRS cannot rely on substance over form to recast BAC's program as "commercial aviation" or taxable transportation because the government is asking the court to ignore the FAA's certification of BAC as a provider of "Fractional Management Services," the IRS's concessions of this exact issue over the previous 11 years, the FARs that regulate BAC's management business, and the hundreds of Aircraft Owners whose aircraft are managed by BAC under Federal regulation.  BAC asserts that the government has failed to plead substance over form, and reliance on this doctrine is now time-barred; the substance-over-form doctrine does not apply because the management services are compelled and encouraged by business and regulatory realities; the IRS recognizes that BAC is a bona fide management company that does not engage in commercial aviation; the FARs refute the substance-over-form argument; the U.S. Treasury Department also recognizes that fractional

aircraft ownership is bona fide; and *Executive Jet* does not control this case.

B

"In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover." *Cooper v. United States ex rel., Comm'r*, 513 F.Supp.2d 747, 750 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *United States v. Janis*, 428 U.S. 433, 440 (1976)). "In a tax collection suit, the government's deficiency assessment is generally afforded a presumption of correctness." *Id.* (citing *Portillo v. Comm'r*, 932 F.2d 1128, 1133 (5th Cir. 1991), and *Burnett v. Comm'r*, 67 Fed. Appx. 248, 248 (5th Cir. 2003) (per curiam)). "The taxpayer has the burden of proving by a preponderance of the evidence that the Commissioner's assessment—its final determination of the taxpayer's liability—was erroneous, since the assessment is presumed to be correct." *Trinity Indus., Inc. v. United States*, 757 F.3d 400, 413 (5th Cir. 2014). "In essence, the taxpayer's burden of proof and the presumption of correctness are for the most part merely opposite sides of a single coin; they combine to require the taxpayer to prove by a preponderance of the evidence that the Commissioner's determination was erroneous." *Portillo*, 932 F.2d at 1133 (citing *Carson v. United States*, 560 F.2d 693, 695-96 (5th Cir. 1977)). In a tax refund suit, the plaintiff "bears the burden of proving both the excessiveness of the assessment and the correct amount of any refund to which he is entitled." *Id.* Form 4340 is sufficient to demonstrate the amount of the IRS assessment against BAC for the Tax Periods, and the assessment is entitled to a presumption of correctness. *See Trinity Indus.*, 757 F.3d at 413 ("[T]he assessment itself is entitled to a presumption of correctness[.]"); *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992)

- 45 -

(affirming that Form 4340 is "presumptive proof of a valid assessment where the taxpayer has produced no evidence to counter that presumption").

To determine whether BAC provided taxable transportation under § 4261, the court applies the "possession, command, and control" test. *NetJets*, 2015 WL 313939, at *17.

> Through a series of revenue rulings, the IRS has . . . developed a test for determining whether an entity provides commercial transportation triggering § 4261, or whether an entity is merely assisting the owner of the means of transportation, in which case the owner is engaged in non-commercial transportation and § 4261 does not apply. The IRS has ruled that if an entity, other than the entity being transported, has "possession, command, and control" of the means of transportation and charges for its use, that entity is providing taxable transportation within the meaning of § 4261.

*Id.* (citing Revenue Rulings). While "Revenue Rulings do not have the presumptive force and effect of law," and "are merely persuasive as the Commissioner's official interpretation of statutory provisions," the Fifth Circuit "usually 'accord[s] significant weight to the determination of the IRS in its revenue rulings." *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 452-53 (5th Cir. 2008) (quoting *Sealy Power, Ltd. v. Comm'r*, 46 F.3d 382, 395 (5th Cir. 1995), and *St. David's Health Care Sys.*, 349 F.3d 232, 239 n.9 (5th Cir. 2003)). "[T]he IRS has employed this test for over fifty years, and courts have respected it in the meantime[.]" *NetJets*, 2015 WL 313939, at *18 (citation omitted). "[T]he Court looks beyond only the flight time in determining who has possession, command, and control of the aircraft." *Id*. at *19.

- 46 -

C

1

The government maintains that, during the Tax Periods, BAC had possession, command, and control of the means of transportation (i.e., the aircraft) in its Flexjet program. It relies on evidence that, as a condition precedent to the sale of a fractional interest, purchasers were required to enter into a series of agreements, commonly referred to as the "Governing Documents."  D. 4/29/14 Br. 11.  One document was the Dry Lease Exchange Agreement,[24] under which the purchaser of a fractional interest in a program aircraft leased the interest back to BAC.  At the time of each purchaser's flight, BAC possessed a current leasehold interest in the program aircraft being used.  When BAC leased a fractional interest to a customer, BAC owned the interest while the program aircraft was being used.  Even though the Purchase Agreement (another Governing Document) spoke of delivering the program aircraft to the purchaser, an exhibit to the agreement, which the purchaser signed, gave BAC a power of attorney to inspect and accept delivery of the program aircraft on the purchaser's behalf, meaning that delivery to the purchaser never took place.  Under the Management Agreement (another Governing Document), BAC was given immediate possession of the program aircraft at the time of the sale.  BAC therefore not only had a leasehold or ownership interest in each program aircraft, it also had possession.  As part of

---

[24]*See* D. 4/29/14 Br. 11 n.15 ("A 'dry lease' is a lease of the aircraft without the flight crew, while a 'wet lease' is a lease of the aircraft with a flight crew." (citing *Netjets Aviation, Inc. v. Guillory*, 143 Cal.Rptr.3d 111, 117 n.2 (Cal. Ct. App. 2012)).

the Purchase Agreement, the purchaser also executed another power of attorney that permitted BAC to register the aircraft with the FAA.  This power was coupled with an interest and was to last until the earlier of ten years from the date executed or the date the purchaser terminated its interest in the aircraft.  Under the Management Agreement, BAC was required to arrange for the program aircraft to be used, operated, inspected, maintained, serviced, repaired, overhauled, and tested.  BAC was required to (a) maintain the program aircraft in good working order and repair, (b) provide other services, such as hangar space, tie down, standard aircraft stocking, flight planning, weather services, communications, Aeronautical Radio, Inc. or its equivalent, and a computerized maintenance program, (c) make all necessary take-off, flight, slot, and landing arrangements, and (d) provide normal in-flight catering.  BAC was also required to maintain all records, logs, and other materials required by the FAA to be maintained with respect to a program aircraft.  And BAC was required to furnish professionally trained and qualified pilots for each Flexjet flight.  The costs of all the foregoing services were, with certain minor exceptions, BAC's sole responsibility.  BAC was also required to arrange for and obtain all-risk aircraft hull insurance, with both BAC and the interest owners being loss payees.  BAC was also required to arrange for and obtain liability insurance for bodily injury and property damage to the aircraft, with BAC and the interest owners both being the insureds.  The insurance premiums were at BAC's expense, except the interest owners were required to pay their share of any premium increases.  The Management Agreement associated with a lease by BAC of an interest in a program aircraft to a customer was not materially different from the management

agreement associated with the purchase of an interest in a program aircraft with respect to what duties BAC was to perform at its own expense.  The government maintains that the foregoing duties and activities make it clear that BAC was not only in possession of the program aircraft, but that it was also responsible for registering, operating, maintaining, and servicing the aircraft and furnishing the pilot.  The fractional owners and lessees simply had to timely submit their request for a flight and then show up at the appointed time.  BAC therefore at all times had possession, command, and control of the program aircraft, and, as such, was the one doing the moving.

## 2

In its response to the government's motion, BAC challenges 13 of the government's factual assertions.  But having considered these objections and the government's reply, the court concludes that a reasonable trier of fact could only find from the summary judgment evidence that BAC had possession, command, and control of the program aircraft.  The Governing Documents themselves plainly demonstrate this.  And BAC has neither presented evidence that raises a genuine issue of fact nor overcome the presumption of correctness afforded the government's deficiency assessment.

Instead, BAC relies largely on arguments that are unrelated to whether the government should prevail under the possession, command, and control test, including the assertions that this test is the wrong standard, that the controlling question is whether BAC provided "commercial aviation"), and that the government has failed in its motion to address whether BAC provided "commercial aviation."  None of these grounds is sufficient to avoid liability

for FET on MMF.

Insofar as the possession, command, and control test itself is concerned, BAC contends that it acted as the Aircraft Owners' agent, and that the Aircraft Owners were in operational control. Both of these arguments are based largely on the FARs. But as the government points out in its reply brief, an Aircraft Owner could comply with the FARs while delegating the responsibilities that effectively placed the program manager in possession, command, and control of the aircraft. *See* D. 6/3/14 Br. 11-12 (addressing operational control).

Finally, BAC maintains on several grounds that the substance-over-form doctrine cannot be used to recast BAC's program as "commercial aviation" or taxable transportation: the government failed to plead substance-over-form and reliance on this doctrine is now time-barred; the substance-over-form doctrine does not apply because the management services are compelled and encouraged by business and regulatory realities; the IRS recognizes that BAC is a bona fide management company that does not engage in commercial aviation; the FARs refute the substance-over-form argument; the United States Treasury Department also recognizes that fractional aircraft ownership is bona fide; and *Executive Jet* does not control this case. The court disagrees.

BAC does not cite any authority for the proposition that the substance-over-form doctrine must be pleaded. It is not a claim, defense, or affirmative defense, so neither Fed. R. Civ. P. 8(a), 8(b), nor 8(c) requires that it be pleaded. And the only authority that the court has located confirms that it is not a matter that the government was required to plead

in its answer. *See Miller v. Comm'r*, 68 T.C. 767, 774 n.3 (1977) (holding that although an affirmative defense is a matter that requires special pleading other than a mere denial, "[i]n contrast, a substance versus form argument is an underlying legal argument that supports a party's position on a previously raised issue.").

The substance-over-form doctrine can still apply even if BAC's management services are compelled and encouraged by business and regulatory realities (BAC is relying primarily on the FARs), the IRS recognizes that BAC itself is a bona fide management company, the FARs regulate BAC's business, and the Treasury Department recognizes that fractional aircraft ownership is bona fide. *See Rogers v. United States*, 281 F.3d 1108, 1116 (10th Cir. 2002) ("[T]he court does not apply the substance over form analysis where the transaction is not bona fide; rather, if the transaction lacks economic reality, it is analyzed using the economic substance doctrine.").

The court is not relying on the reasoning or result of *Executive Jet* alone to conclude that BAC had possession, command, and control of the aircraft. It is therefore immaterial whether *Executive Jet* arguably does or does not control this case.

Finally, to the extent the government is relying on the substance-over-form doctrine,[25]

---

[25]It is not entirely clear how the government is relying on this doctrine. The government does discuss substance over form in its opening brief, contending that, "[i]n determining whether BAC used the Flexjet program aircraft in a business of transporting the fractional interest owners or lessees for compensation or hire by air, this Court must look to the substance of the Flexjet fractional interest program, rather than its form." D. 4/29/14 Br. 20. But it follows this statement by analyzing how the Flexjet program worked under the terms of two of the Governing Documents: the Joint Ownership Agreement and the Management Agreement. And although it also characterizes what it thinks the Aircraft

BAC has not raised a genuine issue of fact concerning whether the doctrine applies.

D

BAC also opposes the government's summary judgment motion on the grounds set out in its own summary judgment motion.  But for the reasons already set out, the court concludes that these grounds lack merit.[26]

---

Owners were attempting to achieve—that they "were more interested in acquiring, and the Flexjet program was designed to provide, flight time without the detriment of lost repositioning time, not an ownership or a leasehold interest in a corporate aircraft," and that "[a]cquiring an ownership or leasehold interest was simply a means to that end," *id.* at 22—the government does not urge the court to recharacterize BAC's business relationship with the Aircraft Owners in accordance with its true nature.  Instead, it maintains that the Governing Documents themselves evidence that BAC was in possession, command, and control of the program aircraft.

In its reply brief in support of its summary judgment motion, the government plainly asserts that the substance-over-form doctrine applies in determining the precise nature of BAC's business, but four of its six arguments are procedural.  And although the government replies by contending that BAC cannot meet all the requirements for avoiding the form-over-substance doctrine, there is no suggestion that the government is asking the court to examine the substance (i.e., the true nature) of the Flexjet program as opposed to the form.  Rather, the government appears to maintain that the form reflected in the Governing Documents—without recharacterization—establishes that BAC was in possession, command, and control of the program aircraft.

[26]BAC asserts in its reply brief in support of its summary judgment motion that, even if it is assumed that it provided taxable transportation to the Aircraft Owners, FET still would not apply to MMF because such fees do not qualify as an "amount paid" for "taxable transportation" under 26 U.S.C. § 4261.  BAC reasons that the term "transportation" means movement from one point to another; for a payment to be made for "transportation by air," the payment must be made in return for actually being transported; and MMF are unrelated to actual transportation and cover the fixed costs that an Aircraft Owner must incur as a result of owning an aircraft, regardless whether the owner actually uses the aircraft.  The court disagrees.  Both fixed and variable costs are included in what is paid to move a passenger from one point to another.  Payment of MMF is one of the preconditions to receiving air transportation services.   MMF therefore qualify as "amounts paid" for "taxable transportation" under 26 U.S.C. § 4261.

The court therefore holds that BAC is not entitled to recover on its claim for a refund and abatement of FET owed on MMF, and that the government is entitled to summary judgment on its counterclaim.

## X

A holistic theme of BAC's briefing—encapsulated in a timeline in one of its supplemental briefs—is that there is a certain "impropriety" to holding BAC liable for failing to collect and remit FET on MMF given the protean positions that the IRS has taken on this issue over the last 22 years. P. 2/10/15 Br. 19.[27] There are laws and doctrines, however, that address such concerns. BAC relies on one of them—the Duty of Clarity—although it has not shown that this doctrine assists it here.[28] And, in the end, the court discerns no "impropriety" in holding BAC to the terms of a 2004 TAM issued directly to its predecessor, of which BAC

---

At oral argument, the court questioned the government concerning whether some components of MMF are not taxable. The government acknowledged that "some of the things that probably are paid out of those [MMF] aren't subject to tax." Tr. Oral Arg. 7. But it added that it is incumbent upon the tax collector or the taxpayer to determine which are and which are not; that if this showing is not made, then, under Treas. Reg. § 49.4261-2(c), FET must be charged on the MMF in their entirety; and that BAC has never asserted that some portions of the MMF are taxable and others are not. *Id.* at 7-8. Because BAC does not argue that some components of MMF are not taxable—it maintains that no component is taxable—the court need not decide whether FET are owed on some (but not all) portions of the MMF for the Tax Periods.

[27]BAC does not contend that it should not be subjected to penalties if the court concludes that BAC owes unpaid FET.

[28]At oral argument, the court asked BAC's counsel whether the government is legally prevented from changing its position. In response, he did not assert that the government is generally precluded from doing so; instead, he stated that the government must comply with the Duty of Clarity, and that it is precluded from doing so "until they tell us in a clear and nonspeculative manner we had an obligation to collect that tax." Tr. Oral Arg. 19.

was aware, that clearly advised that the MMF were subject to FET as amounts paid for taxable transportation under 26 U.S.C. § 4261.

*  *  *

Accordingly, the court grants the government's motion for summary judgment and denies BAC's motion for summary judgment.  The court grants BAC's motion for leave to file supplemental appendix, and BAC's third supplement to appendix is deemed filed today. The court denies without prejudice as moot the government's motion to exclude expert testimony of Gary M. Arber.  The court directs the government to present a draft form of judgment for review by BAC's counsel for proper form and for the court's consideration for entry.[29]  The May 4, 2015 trial docket setting is vacated.

**SO ORDERED**.

March 20, 2015.

Sidney A. Fitzwater
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[29]This procedure appears advisable in case it is necessary to compute sums (such as interest) that have accrued during the pendency of the litigation.

- 54 -